UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL BOMBASSEI,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

Case No.:
Hon.

_____/

JOHN A. SCHIPPER (P68770)
The Schipper Law Group, PLC
Attorney for Plaintiff
200 E. Big Beaver Road
Troy, MI 48083
(248) 729-2414
_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.

## COMPLAINT

Plaintiff, CHERYL BOMBASSEI, through her attorneys, JOHN A. SCHIPPER and THE SCHIPPER LAW GROUP, PLC, files this Complaint against Defendant as follows:

### JURISDICTION AND VENUE

1. This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and

1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2. The Karmanos Cancer Institute Plan ("the Plan") includes long-term disability insurance and life insurance policies, which Plan is sponsored by Plaintiff's former employer, Karmanos Cancer Institute for the benefit of its employees. Defendant ("The Lincoln National Life Insurance Company") underwrites and administers the long-term disability and life insurance policies contained in the Plan.

3. 29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials. Plaintiff ("Ms. Bombassei") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review. This matter is ripe for juridical review.

4. Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## NATURE OF ACTION

5. This is a claim seeking disability income benefits under the Plan, which Plan was intended to provide long-term disability income benefits to Karmanos Cancer Institute's employees, including Ms. Bombassei. Additionally, the Plan is to toll life insurance premiums while the participant is considered

disabled. This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

## THE PARTIES

6.      Ms. Bombassei is 58 years-of-age. She worked as a nurse and nurse practitioner nearly her entire adult working life; until September 4, 2018 when the symptoms of her medical conditions – including narcolepsy, rheumatoid arthritis, left shoulder disorder and depression – caused her to no longer have the functional capacity to work.

7.      The Lincoln National Life Insurance Company is a foreign corporation, with CSC-Lawyers Incorporating Service Co., 601 Abbott Road, East Lansing, MI 48823 acting as its resident agent for service of process.

8.      During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment, Ms. Bombassei received coverage under the Plan as a "participant," as defined by 29 U.S.C. § 1002(7). This claim relates to benefits due under the above-described Plan.

## FACTUAL STATEMENT

9.      Ms. Bombassei sufferers from several severe medical conditions, including, but not limited to, narcolepsy, rheumatoid arthritis, left shoulder disorder and depression.

10. On or about September 4, 2018, the symptoms of these medical conditions became so disabling as to reduce Ms. Bombassei's functional capacity below that required of any job in the economy.

11. Ms. Bombassei has not returned to work since that time.

12. Ms. Bombassei's medical diagnoses are substantiated by objective medical testing, including a polysonogram, mean sleep latency test, MRI, X-Rays, blood tests, and quanteferon test all of which overwhelmingly support diagnoses of narcolepsy and rheumatoid arthritis.

13. Ms. Bombassei has sought treatment from several physicians and, despite best efforts, they have not been able to control her symptoms, which symptoms leave her in a constant state of sleep deprivation, fatigue, inflammation, uncontrolled sleep attacks and mild to moderate joint pain.

14. The Social Security Administration found that Ms. Bombassei's medical conditions were so extreme that she would need to lay down and rest up to 2 hours in a workday.

15. After consulting a vocational expert, the Social Security Administration found that Ms. Bombassei's restrictions disqualify her from every occupation in the economy. She was soon thereafter granted a fully-favorable award of Social Security Disability benefits.

16. Pursuant to the terms of Defendant's Plan, for the first 24 months of benefits, "disability" (and hence qualification for benefits) is defined by the "own occupation" standard, meaning that the participant need only not be able to perform the occupation in which she is employed. After exhaustion of those 24 months, the Plan then defines disability as the inability to perform "any occupation".

17. Defendant granted Ms. Bombassei benefits for the first 24 months of her claim, from March 5, 2019 to March 5, 2021.

18. However, on March 5, 2021 Defendant terminated its approval of the claim for its alleged reason that Ms. Bombassei no longer meets the definition of "total disability" within the plan when comparing her functional capacity to requirements for "any occupation".

19. On March 9, 2021 Ms. Bombassei filed her first administrative appeal, disputing Defendant's termination of long-term disability benefits.

20. On July 14, 2021, Defendant denied Ms. Bombassei's first appeal, maintaining its termination of benefits.

21. On January 9, 2022, Ms. Bombassei filed a second administrative appeal, disputing Defendant's termination of long-term disability benefits.

22. On March 9, 2022, Defendant denied Ms. Bombassei's second appeal, maintaining its decision to terminate payment of benefits.

23. Defendant's actions have now foreclosed all mandatory avenues of administrative appeal and this matter is ripe for judicial review.

24. Because valid, objective, and well-supported proofs establish Ms. Bombassei's ongoing disability within the Plan policy's terms, she is entitled to the immediate payment of long-term disability benefits retroactive to the date they should have been paid, March 5, 2021 and restoration of coverage of the Plan life insurance policy.

25. Defendant's denial of benefits was arbitrary and capricious and was contrary to medical and other evidence that overwhelmingly supports Plaintiff's claim. Defendant's denial of Plaintiff's benefits and revocation of life insurance therefore amounts to a breach of the contract for insurance.

26. Plaintiff, has exhausted all mandatory appeals and/or reconsideration processes provided by Defendant; nevertheless, Defendant refuses to issue payment of benefits rightfully due and owing to Plaintiff and refuses to restore life insurance coverage.

27. 29 U.S.C. § 1132(a)(1)(B) states as follows:

> (a) Persons Empowered to Bring a Civil Action- A civil action may be brought –
>
> (1) by a participant or beneficiary –
>
> (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

28.  As a result of Defendant's wrongful denial of disability benefits and termination of life insurance, Plaintiff has sustained the following damages, including, but not limited to:

    (a)  Loss of past, present and future income in the form of wage loss compensation benefits;

    (b)  Loss of life insurance coverage.

**WHEREFORE,** Plaintiff, CHERYL BOMBASSEI, prays for Judgment in her favor and against the Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, in whatever amount she is found to be entitled, in addition to costs, interest and attorney fees.

Respectfully submitted,

THE SCHIPPER LAW GROUP, PLC

/s/ JOHN A. SCHIPPER (P68770)

Attorneys for Plaintiff
200 E. Big Beaver Road
Troy, MI 48083
(248) 729-2414 Phone/Fax

jschipper@tslgroup.law

Dated:      March 21, 2022